

NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## AT BALTIMORE

| | |
|---|---|
| In re: | Case No. 17-11781 |
| Judith and Marvin Allgood, | Chapter 13 |
| Debtors. | |
| Judith and Marvin Allgood,<br>Plaintiffs,<br><br>v.<br><br>Hallmark Woods Homeowner Association,<br>Inc.,<br>Defendant. | Adv. Pro. No. 19-00358 |

## MEMORANDUM OPINION IN SUPPORT OF
## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [ECF No. 46],
## DISMISSING AMENDED COMPLAINT [ECF NO. 50],
## AND CANCELLING PROCEEDINGS

Before the Court is the Defendant's Motion for Summary Judgment as to Plaintiff's

Amended Complaint (the "Motion for Summary Judgment" or "MSJ") filed by the defendant

Hallmark Woods Homeowner Association, Inc. (the "HOA"), the Combined Memorandum in

Opposition to Motion for Summary Judgment and Trial Memorandum (the "Opposition") filed by

the plaintiffs Judith and Marvin Allgood (the "Allgoods"), and the Defendant's Reply to Opposition to Motion for Summary Judgment (the "Reply") [ECF Nos. 46, 58, 61]. A hearing was held on the Motion for Summary Judgment on July 14, 2021 (the "Hearing"). At the Hearing, the HOA's Exhibits A,[1] A-1 through A-8, and B were admitted, without objection, and the Allgoods' Exhibits A-W were admitted, without objection.[2]

In this action, the Allgoods are seeking declaratory judgment that an Access Agreement providing for an easement for a road over common area property owned by the HOA for the neighboring community is valid. There is a pending sale of the Allgoods' property that contemplates the construction and sale of a number of homes on the property, and is predicated upon the Access Agreement. [ECF No. 155]. Under the terms of the pending sale, the proceeds of $835,000 will be paid to the secured lender, and the Allgoods will remain on their property while the lots are being developed and sold. The Allgoods also will have the option of purchasing their residential portion of the property for $602,000 for a period of five years after closing. This option to remain in the property for a period of time has particular value to the Allgoods because they are elderly, and Mrs. Allgood suffers from certain spatial health issues, which may make a move to a new home difficult. If the Access Agreement is invalid, the pending sale may fall through and the secured lender may then seek to enforce its remedies, such as foreclosure.

---

[1] HOA Exhibit A is the Affidavit of John Verde (the "Verde Aff.").

[2] Admission of the Allgoods' Exhibit X was held pending submission of a line indicating whether the HOA objected or did not object to the admission of Exhibit X. The HOA has timely submitted a line (the "Line") stating that the HOA "does not dispute that the search criteria used by [the Allgood's counsel] as evidenced in Exhibit X appears authentic, [the HOA] supplements the record and attaches a business entity search for 'Hallmark Woods' in the Maryland Department of Assessments and Taxation database," which provides public access to copies of the Articles (defined below) for the HOA (among other things). [ECF No. 69]. The HOA states that, to the extent that the Allgoods' intent with respect to Exhibit X was to demonstrate that the Articles are not publicly available, the HOA objects to its admission. *See id.* at p. 2. At the Hearing, counsel for the Allgoods stated that the purpose of Exhibit X was to show that his search of the online records of the Maryland Land Records, as reflected in the printout marked Exhibit X, did not produce a copy of the Articles. The Allgoods' counsel acknowledged that the Articles were publicly available through online searches of corporate records. Accordingly, Exhibit X is admitted. The printout from the HOA's search of the Maryland Department of Assessment and Taxation's online database attached to the Line as Exhibit 1 is admitted as "HOA, Line Exhibit 1."

The HOA argues that the Access Agreement is not valid because it was not signed by agents with authority. The Access Agreement was signed by two officers and directors, and was never approved by the requisite number of members entitled to vote. When the Access Agreement was submitted to the voting membership for approval, the membership overwhelmingly voted against it. And, on two prior occasions, in 2003 and 2004, the Allgoods sought approval of a similar access easement, and on both occasions their request was denied.

While the Court is deeply sympathetic to the Allgoods' plight, the governing documents of the HOA clearly provide that, to be valid, the Access Agreement had to be approved by the requisite number of members of the HOA entitled to vote. It was not. There also is no evidence that the HOA ever gave any indication to the Allgoods that the two directors had authority to enter the Access Agreement on the HOA's behalf, without membership approval. The Allgoods' counsel fought valiantly on behalf of his clients, but in the end this case is clear cut. Because the two directors did not have authority to bind the HOA to the Access Agreement, the Access Agreement is invalid. The Motion for Summary Judgment will be granted, as further set forth below.

## JURISDICTION AND VENUE

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and Local Rule 402 of the United States District Court for the District of Maryland. The parties have consented to entry of a final judgment and/or order by this Court. [ECF No. 37].

## UNDISPUTED MATERIAL FACTS

On or about April 16, 2019, the Allgoods entered into an "Access Agreement," purportedly with the HOA, which provides for a permanent private access easement from the "West End of Kingsway Drive across the [HOA] open space to the South East corner to the Good Forest

Subdivision."  Compl. at ¶ 6; HOA, Ex. A, Verde Aff. at ¶ 6; Ex. A-6 (Access Agreement).  The

Access Agreement was signed by Judith Allgood and Marvin Dee Allgood as "Owners" and by

Mary McClurg, as President of the HOA and Susan Vogel-Hudgins as Treasurer of the HOA.

Verde Aff. at ¶ 6, Ex. A-6 (Access Agreement).

The HOA is governed by the Hallmark Woods Property Owners Association, Inc. Articles

of Amendment and Restatement (the "Articles") and the By-Laws of Hallmark Woods Property

Owners Accoc[i]ation, Inc. (the "Bylaws").  Exs. A-1 and A-2.  The Articles and Bylaws were

recorded at Liber 31, Pages 261-273, and the Articles are also available through an online search

of the records of the Maryland Department of Assessments and Taxation.[3]  Exs. A-1 and A-2.  The

Articles state:

> There shall be no liquidation, dissolution, or winding up of the
> [HOA], **nor any transfer of any of the assets of the [HOA] except
> upon** the affirmative vote of (i) three-fifths (3/5) of the Board of
> Directors then in office **and the affirmative vote of at least two-
> thirds (2/3) of the membership entitled to vote**, or (ii) upon the
> execution by at least three-fourths (3/4) of the members entitled vote
> of a written instrument approving the proposed action.

Ex. A-1 (Articles) at p. 6, ¶ 7(emphasis added).  The Bylaws state that the President "shall sign all

leases, mortgages, deeds, and other instruments and co-sign all checks and promissory notes **as

directed by the Board.**" Ex. A-2 (Bylaws) at ¶ 7(a)(emphasis added).  The Bylaws further provide

that "[i]n the case of any conflict between the [Articles] and these By-Laws, the [Articles] shall

control." Ex. A-2 (Bylaws) at XVI.

The Access Agreement provides for the transfer of an asset of the HOA, but was not

approved by the affirmative vote of two-thirds of the membership entitled to vote.[4]  It was not

presented for a vote by the membership until September 11, 2019.  Verde Aff. ¶ 12.  Sixty of the

---

[3] *Available at* https://egov.maryland.gov/BusinessExpress/EntitySearch/Business
[4] It also was not approved by written instrument signed by three-fourths of the membership entitled to vote.

ninety-three members of the HOA attended the meeting in person or by proxy, and by a vote of fifty-two to eight, the membership overwhelmingly voted against approval of the Access Agreement.  Verde Aff. ¶ 13.

The Allgoods had previously sought approval of a similar access road from Kingsway Drive to the Property in 2003 and in 2004.  Exs. A-3, A-4, and A-5.  In 2003, Mr. Allgood attended the HOA meeting to "ask the Hallmark Woods community for approval" of the easement.  Ex. A-3.  The membership voted against allowing the easement, and Dan McClellan was tasked with sending a letter to Mr. Allgood informing him that the community was not interested in allowing the requested access.  Ex. A-3.  Mr. Allgood again requested approval of an access road in 2004, which was again declined.  The president of the Board of Directors sent a letter to Mr. Allgood informing him that "the property owners of Hallmark Woods . . . have chosen to decline your request for an easement granting public access from Kingsway Drive to your property."  Exs. A-4 and A-5.

On April 17, 2019, the Allgoods entered a contract for the sale of their property located at 1201 Defense Highway, Gambrills, Maryland (the "Property") with H&H Rock, LLC ("H&H").  *See* Allgood Aff. at p. 3; Allgoods Ex. A (the "Sales Contract").  The Sales Contract provides that the Allgoods agree that H&H "shall have the right to assume all rights and obligations of the 'Owners' under the Easement Agreement" between the Allgoods and the HOA.  Allgoods Ex. A (Sales Contract) ¶ 24.  On April 18, 2019, the Allgoods filed a motion to sell the Property pursuant to the terms and conditions of the Sales Contract.  [Bankr. ECF No. 139].[5]

On May 10, 2019, the minutes of the annual meeting of the HOA held on May 2, 2019 were sent to the HOA membership, and described the easement purportedly granted to the

---

[5] The docket in the Bankruptcy Case shall be cited as "Bankr. ECF No. ___."  An amended motion to sell was filed on July 5, 2019 (the "Motion to Sell") to correct a noticing issue.  [ Bankr. ECF No. 155].

Allgoods under the Access Agreement.[6]  Ex. L.  On June 10, 2019, the Chapter 13 Trustee was informed that the Access Agreement was not properly approved by the HOA, and the Chapter 13 Trustee informed Debtor's counsel of this communication shortly thereafter.  Ex. G; Opposition at p. 8.[7]

On July 26, 2019, Philip Mazza, a property owner and member of the HOA, filed an objection to the Motion to Sell, asserting that the Access Agreement was illegally and improperly obtained.  [Bankr. ECF No. 160].  On July 30, 2019, Ms. McClurg and Ms. Vogel-Hudgins sent a letter to Mr. Kagan (counsel for Mr. Mazza and the HOA) noting among other things, that as directors they were allowed to enter into contracts, such as the Access Agreement, "but the results must be ratified by the [HOA] membership in good standing."  Ex. A-7, p. 2.  Ms. McClurg and Ms. Vogel-Hudgins further stated that they were in the midst of following this process and gathering the materials to present to the HOA membership for a vote up to the point when Mr. Mazza held an "illegal" meeting and attempted to unseat the board.  Ex. A-7, p. 2.  Ms. McClurg and Ms. Vogel-Hudgins then resigned their positions on the board, effective as of July 20, 2019.  Ex. A-7, p. 1.

On September 11, 2019, a special meeting was held at which time a new Board of Directors was elected and membership voted against approval of the Access Agreement, by a vote of fifty-two members voting against approval and eight members voting for approval.  Ex. A-8.  By letter dated September 20, 2019, the Allgood's counsel was informed of the results of the vote and

---

[6] All homeowners in the Hallmark Woods community are members of the HOA.

[7] Throughout this time, the Allgoods were also negotiating with HSBC Bank USA, National Association as trustee for Deutsche Alt-A Securities, Inc. Mortgage Loan Trust, Series 2006-AR6, Mortgage Pass-Through Certificates (the "Lender"), the holder of a promissory note secured by a deed of trust on the Property.  On June 24, 2019, the Lender filed a response to the Motion to Sell stating that it no longer opposed the Motion to Sell.  [Bankr. ECF No. 153].

provided a check from the HOA returning the $1,000 initial payment plus prejudgment interest. Ex. A-8.

On September 30, 2019, the Allgoods commenced this adversary proceeding.[8]  Pursuant to the Amended Complaint,[9] the Allgoods are seeking entry of a declaratory judgment "[d]etermining that the Access Agreement is valid[,] enforceable and permits the Allgoods, any buyers of the Property, their heirs and assigns to gain access to Kingsway Drive through the open space area owned by Hallmark Woods."

## ANALYSIS

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. Proc. 56(c). The Rule further states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment if appropriate, shall be entered against the adverse party.

Fed. R. Civ. Proc. 56(e).

---

[8] The initial complaint named Charles Dorrell, Rosemary Dorrell, and the HOA as defendants.  [ECF No. 1].  The claim against the Dorrells was subsequently dismissed, with prejudice, by agreement of the Allgoods and the Dorrells and by order of the Court.  [ECF Nos. 21 & 23].  The remaining parties – the Allgoods and the HOA – agreed that the Allgoods could file an amended complaint and the HOA could file a motion for summary judgment on or before June 1, 2021.  [ECF No. 48].

[9] The "Amended Complaint" is the Amended Complaint for Declaratory Relief Regarding Property of the Estate. [ECF No. 50].

One of the principal purposes of summary judgment is to isolate and dispose of all factually unsupported claims or defenses. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). To that end, the Court considers all evidence in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that all justifiable inferences are drawn in the nonmovant's favor). The mere existence of an alleged factual dispute does not defeat a motion for summary judgment; rather the standard requires that there be no genuine issue of *material* fact. *Id.* at 247-48. Only disputes over the facts that might affect the outcome of the lawsuit under applicable law will preclude entry of summary judgment. *Id.* Therefore, once a motion for summary judgment is made and supported as provided in the Rule, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. Proc. 56(e). The nonmovant may rely upon any evidentiary materials listed in Rule 56(c), except the motions themselves. *Celotex,* 477 U.S. at 325. If reasonable minds could differ as to the import of the evidence, summary judgment should not be granted. *Liberty Lobby, Inc.*, 477 U.S. at 248.

## The Directors Did Not Have Authority to Bind the HOA to the Access Agreement

The Court will apply Maryland law to resolve this dispute.  The Allgoods are residents of Maryland, the HOA is a Maryland entity, and the Access Agreement was entered into and to be performed within Maryland.  Neither party has asserted that the law of a different jurisdiction applies and, in citing to Maryland law, appear to agree that Maryland law governs.  *See In re Glenn*, 502 B.R. 516, 542 (Bankr. N.D. Ill. 2013), *aff'd sub nom. Sullivan v. Glenn*, 526 B.R. 731 (N.D. Ill. 2014), aff'd, 782 F.3d 378 (7th Cir. 2015) ("The determination of whether any party was an agent with respect to a transaction is a matter of state, not bankruptcy law."); *In re TMST, Inc.*, 10 B.R. 807, 819 (Bankr. D. Md. 2019) (noting that where neither party raises the issue, the federal court will apply the law of the state in which the court sits); *see also Butner v. United States*, 440

U.S. 48, 55 (1979) (holding that property interests are created by and defined under state law unless a federal interest compels a different result).

Under Maryland law, the plaintiff bears the burden of proving the existence and extent of an agency relationship. *See Haley v. Corcoran*, 659 F. Supp. 2d 714, 725 (D. Md. 2009); *Jackson v. 2109 Brandywine, LLC*, 952 A.2d 304, 320 (Md. Ct. Spec. App. 2008). The agent's authority to act must come from the principal. *See Jackson*, 952 A.2d at 321; *Homa v. Friendly Mobile Manor*, 612 A.2d 322 (Md. Ct. Spec. App. 1992). An agent may have actual authority or apparent authority to act for principal. *See In R-Delight Holding LLC v. Anders*, 246 F.R.D. 496, 501 (D. Md. 2007); *Jackson*, 952 A.2d at 321-22; *Progressive Cas. Ins. Co. v. Ehrhardt*, 518 A.2d 151, 155 (Md. Ct. Spec. App. 1986).

### Actual Authority

"Actual authority exists only when 'the principal knowingly permits the agent to exercise the authority or holds the agent out as possessing it.'" *Jackson*, 952 A.2d at 322 *quoting Homa*, 612 A.2d at 322. The undisputed facts of this case establish that the two directors did not have actual authority to bind the HOA to the Access Agreement.

The Articles expressly provide that the transfer of any assets of the HOA requires either (i) the affirmative vote of three-fifths of the directors then in office **and** the affirmative vote of at least 2/3rds of the membership entitled to vote, or (ii) a written instrument executed by at least three-fourths of the membership entitled to vote approving the transfer. Ex. A-1 (Articles) at Art. 8(7). Under the Bylaws, three of five directors is required for a quorum, and every decision made by the Board must be approved by at least three directors. Ex. A-2 (Bylaws) at Art. VIII(4). The Board has the power to "exercise for the [HOA] all powers, duties, and authority vested in or

delegated to the [HOA], **except those reserved to the meeting or to members in the Declaration or Articles.**"  Ex. A-2 (Bylaws) at IX(1)(c)(emphasis added).[10]

There was no affirmative vote of the membership, nor a written instrument executed by the membership approving the Access Agreement.  Because the membership did not approve the Access Agreement, the directors did not have actual authority to bind the HOA to the Access Agreement.[11]

### Apparent Authority

Apparent authority may arise when the words or conduct **of the principal** causes a third party to believe that the principal has consented to or authorized the agent actions.  *See Jackson*, 952 A.2d at 322; *Johns Hopkins Univ. v. Ritter*, 689 A.2d 91, 96 (Md. Spec. App. 1996).  Under the equitable doctrine of apparent authority, "the principal becomes responsible for the agent's actions when the principal's conduct, either affirmative acts or the failure to take corrective steps, has clothed an agent with apparent authority and thereby induces a third party to rely to his detriment."  *Progressive*, 518 A.2d. at 156.  Reasonable reliance by the third party is a critical element of this doctrine.  *See Progressive*, 518 A.2d at 156; *Miller v. Mueller*, 343 A.2d 922, 926 ("The action or manifestation of authority giving rise to the reliance must be that of the principal, and the reliance by the third person on the action or manifestation of authority must be reasonable.")

There is no evidence of any affirmative acts or statements by the HOA indicating that the directors had authority to act on the HOA's behalf with respect to the Access Agreement.  The HOA and its members took prompt action to repudiate the Access Agreement.  Within

---

[10] In the case of a conflict between the Bylaws and the Articles, the Articles govern. Ex. A-2 (Bylaws) at XVI.

[11] The parties quibble over whether a sufficient number of directors approved the transaction. The Allgoods argue that the third director approved the transaction "by virtue of her lack of dissent as required by Section 2-410 of the Maryland Corporations and Associations Code." Opposition at p. 5. This issue does not need to be resolved, however, because the members of the HOA never affirmatively voted to approve the Access Agreement.

approximately one month of the membership being informed of the Access Agreement at the HOA's annual meeting (and a month and a half after the agreement was signed), the Allgoods were notified that the Access Agreement had not been properly approved.  Exs. L, G, and Opposition at p. 8.  From that time on, the members and the HOA took additional steps to reject the Access Agreement, including by filing an objection to the Motion to Sell and holding a special meeting of the HOA and its membership to present and vote upon the Access Agreement.  At that meeting, the membership overwhelmingly voted to reject the agreement, and the Allgoods were promptly informed of this rejection.  Ex. A-8.

Further, reasonable reliance has not been, and cannot be, established.  The Articles are a publicly available document that state the requirements for approval of the transaction.[12]   In addition, on two prior occasions, Mr. Allgood sought HOA approval of a similar access road over the HOA common area.  Exs. A-3, A-4, and A-5.  On both occasions he was informed that the property owners had declined his request.  Exs. A-3, A-4 and A-5.  Given these undisputed facts, the Allgoods did not reasonably rely upon the directors' execution of the Access Agreement as binding upon the HOA.

The Allgoods also have not established detrimental reliance.  While some time and expense were incurred by the Allgoods in negotiating the sales contract with H&H and filing the Motion to Sell, the Motion to Sell has not yet been approved and the Allgoods still own the Property.  There is no evidence that the Allgoods rejected alternative sales opportunities that were not

---

[12] The Allgoods assert that their rights vis-à-vis the Access Agreement cannot be affected by the approval requirements contained in the Articles and Bylaws because Section 2-414 of the Maryland Corporation Code states that the rights of a third party are not affected by bylaws or resolutions unless the third party has knowledge of the bylaw or resolution.  *See* Opposition at p. 6, *citing* Md. Corp. & Ass'n Code § 2-414 (2019).  This section of the Corporations Code does not apply to restrictions contained in Articles, perhaps because the Articles of a corporation are publicly available through the Maryland Department of Assessments and Taxation, while corporate bylaws and resolutions are generally not publicly available.  In any event, because the pertinent requirements are contained in the Articles, rather than the Bylaws, this statute is inapplicable.

contingent upon the Access Agreement.  There also is no evidence that the sale to H&H has fallen through or will not be consummated.

The Allgoods do not contend that the Access Agreement was ratified, nor would this argument succeed.  A principal may become bound by an unauthorized act if it ratifies the conduct. "Circumstances that suggest an intent to ratify include receipt and retention of the benefits of the unauthorized transaction . . . and the failure to make a timely disaffirmance of the unauthorized act."  *Progressive*, 518 A.2d at 156.  The HOA did not retain any benefits, and, in fact, it returned the $1,000 payment received in connection with the Access Agreement plus prejudgment interest to the Allgoods.  As discussed above, the HOA and its members promptly disavowed the Access Agreement.

A separate order will be entered contemporaneously with this memorandum opinion.

cc:    Debtors
       Debtors' Counsel
       Defendant's Counsel

### ###END OF MEMORANDUM ORDER###